# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 3:23-mj-71672 MAG |
| MARCO TULIO DIAZ-CRUZ | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

FILED

Nov 07 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __November 6, 2023__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | - Possession with intent to distribute a controlled substance (fentanyl). |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Steven Mallon

☑ Continued on the attached sheet.

Approved as to form __Michael G. Lagrama__
AUSA Michael G. Lagrama

/s/ Steven Mallon
*Complainant's signature*

Steven Mallon
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/06/2023

*Judge's signature*

City and state: San Francisco, California

Sallie Kim, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Steven Mallon, a Special Agent with the Federal Bureau of Investigation, having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Marco Tulio Diaz-Cruz ("DIAZ-CRUZ") with possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), occurring on or about November 6, 2023, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other special agents and law enforcement officers) are referenced in this affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this affidavit, such information is also described in sum and substance and in relevant part.

3. Because this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since approximately January 2019. Before that, I was a law enforcement deputy with the Hillsborough County Sheriff's Office in Tampa, Florida between approximately January 2014 and December 2018.

5. As part of my duties as an FBI Special Agent, I investigate federal firearms offenses, including the unlawful possession of firearms and ammunition by convicted felons. As a law enforcement officer, I have used a variety of methods to investigate crime, including, but not limited to, visual surveillance, suspect and witness interviews, cellular telephone and cellular location evidence, and the use of search warrants, confidential informants, and undercover operations. I have participated in the execution of multiple federal search warrants.

6. During my training at the FBI Academy, Quantico, Virginia, I received training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. The academy covered aspects of FBI led investigations, including but not limited to physical surveillance, constitutional rights, the execution of search warrants, interview techniques, and working with confidential sources.

7. Based on my training and experience, as well as conversations I have had with experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking. These methods include the use of automobiles, wireless communications devices (such as cellular phones), lookouts and counter surveillance, false or fictitious identities, coded language, and/or encrypted communications. I know that many drug traffickers use cell phones to facilitate their drug dealing activities, including to arrange the collection, transportation, and distribution of narcotics. I also know that many drug traffickers will meet in person at pre-arranged locations to conduct meetings and transactions in furtherance of their drug trafficking activities. Many

drug dealers utilize such practices to commit crimes while avoiding detection by law enforcement.

8. I have also had discussions with other law enforcement officers about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed.

9. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

10. **Possession of Controlled Substance with Intent to Distribute**. Under Title 21, United States Code, Section 841(a)(1), it is unlawful for any person to knowingly possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

11. On November 6, 2023, DIAZ-CRUZ was arrested by FBI Agents near the intersection of Eddy Street and Polk Street, in San Francisco, California, in the Northern District of California. During a search incident to the arrest, the FBI located on DIAZ-CRUZ's person various drugs, including fentanyl, cocaine, crack cocaine, and methamphetamine. Based on the

facts described below, I have probable cause to believe that DIAZ-CRUZ violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), based on his possession with intent to distribute fentanyl.

12.   Between the hours of 5:30 and 5:40 a.m. on November 6, 2023, law enforcement personnel observed and recorded a male, later identified as DIAZ-CRUZ, pacing around and conducting multiple hand-to-hand transactions around the intersection of Eddy Street and Polk Street, in San Francisco, California. DIAZ-CRUZ was wearing a dark grey jacket, dark pants, a black beanie, black shoes, and a black surgical mask. While observing DIAZ-CRUZ, he constantly surveyed his surroundings as if he was looking for, or looking out for, someone. Based on the training and experience of the law enforcement personnel present at that time, the type of hyper vigilance displayed by DIAZ-CRUZ was consistent with behavior commonly displayed by narcotics dealers who are on constant lookout for potential customers, rival drug dealers, and police officers.

13.   DIAZ-CRUZ was observed engaging in at least two hand-to-hand narcotics deals. In a transaction that occurred at approximately 5:34 a.m., DIAZ-CRUZ was observed giving an object to an unknown individual which was behavior consistent with street-level narcotics sales. In a transaction that occurred at approximately 5:36 a.m., DIAZ-CRUZ was observed removing a bag containing a white substance from his pocket and appeared to break off a piece, which he then handed to an unknown individual. At 5:38 a.m., I observed an additional transaction of a similar nature involving DIAZ-CRUZ. Based on conversations with other law enforcement officers, as well as my experience in the field, I recognized the hand-to-hand transactions to be the sale of illicit narcotics by DIAZ-CRUZ. Additionally, upon arrival of law enforcement, DIAZ-CRUZ attempted to hide from law enforcement in a nearby alcove.

14.   Based on these observations, law enforcement arrested DIAZ-CRUZ without incident for possession of controlled substances. Law enforcement confirmed that DIAZ-CRUZ was the same person observed conducting the hand-to-hand narcotics sales described above.

Law enforcement conducted a search of DIAZ-CRUZ incident to his arrest and recovered the following items from DIAZ-CRUZ's person:

- Suspected Fentanyl in a plastic bag, weighing about 4.7 gross grams;
- Suspected crack cocaine in a plastic bag, weighing about 19.2 gross grams;
- Suspected methamphetamine in a plastic bag, weighing about 5.7 gross grams; and
- Suspected cocaine in a plastic bag, weighing about 5.1 gross grams.

15. The various suspected fentanyl, crack cocaine, methamphetamine, and cocaine seized from DIAZ-CRUZ' person later tested presumptive positive utilizing a TruNarc testing device.







16. Drug dealers in the Tenderloin, in order to cater to their customers, also commonly sell multiple drugs at a given time. DIAZ-CRUZ's simultaneous possession of several different drugs—cocaine, cocaine base, fentanyl, and methamphetamine—indicates that he possessed the drugs found on his person, including the fentanyl, with the intent to distribute. I also note that the relatively larger amounts of the presumptive positive fentanyl (4.7 grams) and crack cocaine (19.2 grams) indicate that DIAZ-CRUZ possessed the substances with the intent to distribute. The typical Tenderloin drug user generally possesses only very small amounts of a drug (e.g., a gram or two at a time) for personal use, and even then for a short period of time, because the user will often immediately consume the drug after purchasing it.

17. All of the foregoing—including the several suspected hand-to-hand drug transactions, DIAZ-CRUZ's possession of multiple drugs, and the manner in which the drugs were packaged—combined with the location of the arrest in San Francisco's Tenderloin District, an area notorious for a high volume of drug sales activity, leads me to conclude there is probable cause to believe DIAZ-CRUZ possessed the drugs law enforcement found on his person with the intent to distribute.

## CONCLUSION

18. Based on my training and experience, and the facts and circumstances set forth above, there is probable cause that on November 6, 2023, in the Northern District of California, DIAZ-CRUZ possessed with the intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

*/s/ Steven Mallon*
Steven Mallon, Special Agent
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 6th day of November 2023.

_____
HONORABLE SALLIE KIM
United States Magistrate Judge